# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) In Proceedings under Chapter 7 |
| | ) |
| Rickie L. Wiggs, | ) Case No. 11-40519 |
| | ) |
| Debtor. | ) |

## OPINION

This matter comes before the Court on the Trustee's objection to the Debtor's claim of a homestead exemption in real property that was sold post-petition. The Trustee alleges that the exemption was claimed in bad faith. A hearing was held on July 17, 2013. The Debtor appeared personally and through counsel, Darrell Dunham. Trustee Dana Frazier appeared personally. The Court heard evidence through the Debtor's testimony on direct examination by his counsel and cross-examination by the Trustee. For the reasons that follow, the Trustee's objection is sustained.

The Debtor did not list the real property at issue on his original Schedule A filed on April 18, 2011. The property was listed on an amended Schedule A, filed on May 17, 2013. The Debtor also did not claim a homestead exemption on his original Schedule C, filed contemporaneously with his petition on April 18, 2011. The Debtor filed an amended Schedule C on May 17, 2013, more than two years after his original schedule was filed. This amended schedule claimed a $15,000 exemption in real property known as 105 Clemens Ave., in Vienna, Illinois. The home was valued at $175,000 "based on sale price. The home was jointly owned by Debtor and his non-filing spouse." The exemption was claimed under the Illinois homestead exemption found in 735 ILCS 5/12-901. The Trustee objected to the amended schedule on May 29, 2013, well within the thirty days required under Federal Rule of Bankruptcy Procedure 4003(b)(1).

Under Federal Rule of Bankruptcy Procedure 1009(a), a schedule "may be amended by the debtor as a matter of course at any time before the case is closed." Amending schedules, however, is not without limits. "[A]n amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors." *In re Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993). "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Id.* (quoting *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985), *cert. denied*, 475 U.S. 1085 (1986)).

The Trustee bears the burden of proving that the Debtor's homestead exemption was not properly claimed. *See* FED. R. BANKR. P. 4003(c). She must present clear and convincing evidence of the Debtor's bad faith or of prejudice to creditors. *Yonikus*, 996 F.2d at 872 (7th Cir. 1993). In the present case, the Trustee argues that the Debtor exhibited bad faith by concealing the real property.

The Trustee notes that the Debtor did not claim any exemption in the property on his original Schedule C, nor did he schedule the property on his original Schedule A. Further, the Debtor claimed that the property was held in his "wife's name alone since 2006" on Schedule D. Through her own research, the Trustee uncovered documents showing that the Debtor executed a quitclaim deed in 2006 transferring ownership of the property to himself and his wife as tenants by the entirety. The Trustee confronted the Debtor with this evidence at a Rule 2004 examination, at which point the Debtor claimed it was an innocent mistake.

That is the position the Debtor continued to advance up to and throughout the hearing. In his reply to the Trustee's objection, the Debtor avers, "There is no evidence that the Debtor attempted to intentionally deceive this Court. At the time that he filed his [original] schedules he

believed that he had no interest in the property for which he is now claiming a homestead exemption." Debtor's Reply, document number 82, ¶ 3. On direct examination, the Debtor testified that he believed he was deeding the property only to his wife. He stated that he did not understand a tenancy by the entirety at the time he transferred ownership. The deed was prepared by an attorney, and the Debtor admitted to reading and signing it. Regarding the omission of the real property from his original schedules, the Debtor "didn't think [he] had an interest in it."

More telling to the Court, however, is what the Debtor failed to disclose at any time prior to the Trustee's cross-examination. The Debtor failed to disclose that he was previously employed by a title company. He currently owns an interest in a title company, and he owned this interest at the time he transferred the property. Despite this, he claimed that he was not familiar with real estate transactions and that he did not "do the research or prepare the deeds." He testified that he does "some loan closings, when needed," but that he mostly handles administrative matters for the company.

The Debtor's experience with real estate does not end there. The attorney who advised the Debtor to transfer the property to a tenancy by the entirety and who handled the Debtor's quitclaim transfer is regularly employed by the title company the Debtor owns. The Debtor was also previously employed as the president of a bank. In that capacity, the Court can assume he reviewed financial statements of assets and liabilities as part of lending transactions. He admitted to looking at deeds in his capacity as president "on occasion." A deed showing the ownership interest in a parcel of real estate would be part of the due diligence to verify assets.

He admitted to reading and signing the deed that transferred the property in 2006. He claimed to have forgotten exactly what kind of transfer was effectuated, although he claimed the

3

transfer was prompted by a lawsuit and his desire to protect his interest in the real estate from creditors. The Debtor testified that, even after being shown the deed with his interest in the property at the 2004 exam, he still did not immediately attempt to amend his schedules thereafter. He believed his prior attorney would have handled the matter on his behalf.

At trial, the Debtor's ownership interest in a title company and his experience as a bank president were not disclosed by him until the Trustee began her cross-examination. As incredulous as some of the testimony is standing alone, the Court finds the Debtor's credibility to be further lacking because he failed to divulge this information until it was revealed under oath and in an adversarial capacity. The Debtor, by his own admission, appears to have vast experience in real estate, and in deeds and titles in particular.

The Debtor's credibility is also eroded by the fact that he sold the real property post-petition without the Court's permission and without notice to the Trustee. The check he received as proceeds from the sale would have been made out to him and his wife jointly because the property was owned as a tenancy by the entirety. To cash the check, he would have had to endorse it along with his wife. If he did not understand that he had an interest in the property before that point, which seems implausible, he certainly should have recognized such an interest upon seeing his name on the check. His experience in banking and real estate titles would alert him to the obvious conclusion that one does not receive proceeds from a sale unless one holds some kind of legal interest in the property sold.

The Court finds that the Trustee has shown clear and convincing evidence that the Debtor attempted to conceal his ownership interest in the real property. Because of this, the Trustee's objection to the Debtor's amended Schedule C is sustained. The amendment will not be allowed. The finding of bad faith negates any protection afforded by a tenancy by the entirety in the

proceeds from the sale.  The Debtor shall turn over his one-half interest in the proceeds from the sale of the real property which totaled $19,649.27, amounting to $9,824.64.

    SEE ORDER ENTERED THIS DATE.

ENTERED: August 19, 2013

                                        /s/ Laura K. Grandy
                                  UNITED STATES BANKRUPTCY JUDGE/8